MANUEL DAVILA, appellant,

*v.*

UNITED FRUIT COMPANY, respondent.

|Decided January 31st, 1918.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

This is a motion to dismiss the bill of complaint filed in this cause to compel the specific performance of a contract alleged to have been entered into by the defendant for the purchase of lands in the Republic of Columbia, and in addition to have the defendant submit to arbitration the question of the value of some of the lands referred to in the contract, or in the alternative to have the court ascertain, by such proof and means as shall seem equitable, the reasonable and fair value of such lands.

The contract set out in the bill consists of two papers, one referred to as the option, dated November 3d, 1911, and the other a telegram dated October 24th, 1912, claimed to be an acceptance of the option, signed by one Montejo, the agent of the defendant.

The portion of the option involved in this action reads as follows:

"The said Davila further agrees to give the United Fruit Company an option to purchase at any time within one year all the remaining lands in the Santisima Trinidad de Aracataca and La Concepcion and other lands adjacent and owned or controlled by the said Davila. The price to be paid for uncultivated lands shall be $20 gold per hectare; the price to be paid for cultivated lands shall be the fair value agreed by the parties or fixed by three arbitrators, one chosen by each party and one by the two so chosen."

The telegram of acceptance as set out in the bill of complaint reads as follows:

*88 N. J. Eq.*        Davila *v.* United Fruit Co.

"October 24th, 1912.

*"Santa Marta,*
    *Manuel Davilla,*
        *Bogota.*

"Exercising the option given by you to the company in agreement of November 3d of last year, company formally notifies you that it purchases your remaining lands in the Santisima Trinidad tract bounded on the north by the river Sevilla, on the east by the Valle Durpar highway, on the south by the river Aracataca, on the west to the swamp or inundated lands (Anegadizos) of the Cienega Granda. Appoint attorney to execute deed.

                "Your affectionate friend,

                                "MONTEJO."

The bill alleges that the total area of the lands agreed to be sold was twenty-five thousand five hunderd and eighty hectares and five thousand square meters; that of this total area twenty-four thousand and eighty hectares and five thousand square meters is uncultivated land and one thousand five hundred hectares is cultivated land, or stated in terms with which we are more familiar, the entire tract contained approximately sixty-four thousand acres, of which three thousand seven hundred and forty acres were cultivated.

The bill further alleges that complainant has at all times been ready, willing and able to execute a deed for the lands in accordance with the terms of the contract; and that he has repeatedly requested defendant to appoint a time and place for the performance of the contract and that this defendant has failed and neglected so to do.

A number of reasons have been assigned in support of the motion to dismiss, but in view of the conclusion which I have reached, it will not be necessary to refer to more than one of them, viz.:

The bill cannot be maintained because it seeks a decree for the enforcement of an agreement to arbitrate, or in the alternative to fix the price which the defendant is to pay for the lands claimed to be covered by the alleged contract.

This objection states substantially what was held by the chief-justice in delivering the opinion of the court in the case of the *City of Providence* v. *St. John's Lodge, 2 R. I. 46,* and quoted with approval by Chancellor Green in our leading case of

*McKibbin* v. *Brown, 14 N. J. Eq. 13; affirmed, 15 N. J. Eq. 498,* when he said:

"It is undoubtedly true that a court of equity will not enforce a contract of sale where the price is to be fixed by the parties, or by arbitrators to be chosen by the parties, and for the plain reason, that the contract sought to be enforced is incomplete in an essential particular, and the court have no power to substitute themselves or a master to fix the price in the place of the parties or of arbitrators to be chosen by the parties. This would be not to enforce an existing contract of the parties, but to make one for them."

By the terms of the option before us, the price to be paid for the cultivated land is "the fair value agreed upon by the parties or fixed by three arbitrators, one chosen by each party and one by the two so chosen." And it appears that the contract is in this respect, at least, incomplete and uncertain, because the price to be paid for the cultivated land was still a matter for negotiation, at the time the telegram of acceptance of the option was received by complainant.

In the course of his opinion in *McKibbin* v. *Brown, supra,* Chancellor Green stated the doctrine which has been uniformly followed in the cases in our state, when he said:

"No specific performance of a contract can be decreed in equity unless the contract be actually concluded and be certain in all its parts. If the matter still rest in treaty, or if the agreement in any material particular be uncertain or undefined, equity will not interfere. *Fry Spec. Perf. §§ 164, 203.*

"'I lay it down as a general proposition,' said Lord Rosslyn, 'to which I know no limitation, that all agreements, in order to be executed in this court, must be certain and defined.' *Lord Walpole* v. *Lord Orford, 3 Ves. 420.*

"The same doctrine is uniformly recognized in all the cases, English and American."

In the later case of *Woodruff* v. *Woodruff, 44 N. J. Eq. 349,* where the contract provided that complainant might purchase back his interest in the farm at a valuation to be made by two disinterested parties, one to be selected by the complainant and the other by the representative of Patrick Woodruff, and Pat-

rick's representative refused to name a valuer, Chancellor McGill quoted, with approval, from *Fry Spec. Perf.* § *163*, that:

"If the contract be between A and B to sell and buy at such a price as valuers, to be named by them, shall fix, it seems that either A or B may refuse to name a valuer, and the contract will remain incapable of completion, without any liability on the part of the refusing party."

In the case of *Domestic Telegraph Co.* v. *Metropolitan Telephone Co., 39 N. J. Eq. 160*, the contract sought to be enforced provided that on the expiration of the first license, and in a certain contingency, the complainant should have the first right of acquiring a license, and the relief sought was to compel the defendant to specifically perform this contract by granting to complainant a new license "upon such terms as may be determined by the court." Vice-Chancellor VanFleet, citing *McKibbin* v. *Brown, supra; Potts* v. *Whitehead, 20 N. J. Eq. 55,* and *Waterm. Spec. Perf.* §§ *141, 152, held*—that courts of equity may compel the specific performance of a contract which the parties have agreed upon and which is sufficiently certain and definite in its terms to enable the court to see what they meant, but that it was entirely beyond the power of any judicial tribunal to make a contract for litigants, or compel them to make a contract with each other.

Until the contract has been concluded between the parties and its terms definitely ascertained, and while negotiations are pending over matters relating to the contract, and which the parties regard as material to it, although as to some matters they may be agreed, specific performance will not be decreed. *Brown* v. *Brown, 33 N. J. Eq. 650.*

In affirming the opinion of Vice-Chancellor VanFleet on appeal (*40 N. J. Eq. 287*), no opinion of the majority of the court is reported, but Mr. Justice Magie, in his dissenting opinion (at *p. 303*), said:

"Where contracts have left terms to be fixed by arbitration, and one of the contracting parties has refused to enter into the arbitration according to the contract, courts of equity have declined to compel the refusing party to enter into the arbitration he has contracted for. This refusal, I apprehend, is grounded on

the general rule that courts of equity will not specifically enforce an agreement to submit any matter of difference between parties to such a tribunal."

In the early case of *Copper* v. *Wells, 1 N. J. Eq. 10,* Chancellor Vroom said:

"The principle is well settled that the court has no power to compel a party to appoint an arbitrator and of course that a specific performance cannot be decreed."

And to the same effect is *Van Doren* v. *Robinson et al., 16 N. J. Eq. 256.*

Counsel for complainant, while recognizing generally the rule followed in the foregoing cases, contends, however, that the stipulation in this contract to the effect that the price to be paid for the cultivated land is to be fixed by the parties or by arbitrators named by them is but subsidiary and unimportant, and not an essential or material part of the contract, and therefore brings the case within the exception to the rule, explained in *Fry Spec. Perf. (5th ed.) 179 § 364,* viz.: That equity exercises jurisdiction in such cases on the view that such contracts are

"substantially for the sale of the property at a fair price, the mode of ascertainment, though indicated by the contract being subsidiary and nonessential, and where consequently if that mode of ascertainment has failed the court will have recourse to some other means of coming at the fair price and of thus carrying into effect the contract in its essential parts."

The argument advanced to bring this case within the exception is that the cultivated lands on which the price is to be fixed represent only six per cent. of the total area to be conveyed; that these lands being under cultivation, bearing growing crops, which must fluctuate in value from season to season, it is therefore obvious that neither the parties nor arbitrators could determine the fair value of this improved parcel until defendant had exercised its option to purchase and fixed a time at which title should pass.

The difficulty with the proposition thus advanced is that it, in effect, claims that the contract is not to be regarded as an entirety, and that the part relating to the cultivated lands may be severed from the rest of it. I am unable to adopt this view and I am also unable to reach the conclusion that

the provision of the contract relating to the mode of ascertaining the value of the cultivated lands is a non-essential and not a material part of the contract. While it is true such lands represent only six per cent. of the tract to be purchased, they amount, however, to one thousand five hundred hectares according to the bill, and in the bill it is alleged that this cultivated land is worth $100 per hectare, which, at complainant's own valuation, would make these lands worth $150,000—an amount which I am unable to say is unimportant or insignificant. At the valuation fixed by complainant for the cultivated and uncultivated lands the total cost of the property would be something over $600,000, and I am not convinced that one-quarter of this sum is so immaterial and unimportant that the court should ignore the mode agreed upon by the parties for its ascertainment, and should compel the defendant to pay the whole or such part thereof as the court should determine was fair and reasonable. This would not be enforcing the contract of the parties; it would be making a contract for them.

The law controlling the situation before me is too well settled to leave room for any doubt.

I consider the value of the cultivated lands to be a very material part of this agreement, and I also regard the method of ascertaining this value, which the parties have agreed upon, as an essential part of the contract; apparently by this contest the parties themselves so regard it, and as neither fraud nor part performance has to be considered, there is nothing in the case to justify me in taking it out of the general rule denying specific performance of an incomplete contract.

A decree will be advised that the bill be dismissed.

*Mr. August C. Streitwolf,* for the appellant.

*Messrs. McCarter & English,* for the respondent.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS—11.

*For reversal*—None.